SPARROW *v.* WELD.

No. 9296.   MAY 19, 1933.

*Pottle, Hardwick, Farkas & Cobb* and *Lamar Cox,* for plaintiff.
*Bennet & Peacock* and *Louis A. Peacock,* for defendant.

PER CURIAM.   The Court of Appeals certified the following question:   "Where after the levy of a distress warrant no counter-affidavit is filed, and the property is not replevied but is sold to satisfy the alleged indebtedness for rent, is the prosecution at an end, so as to give a right of action for a malicious use of legal process to the alleged tenant against the person suing out the distress warrant; or is it essential to such right of action that an issue should have been formed by a counter-affidavit filed and that this issue should have been determined favorably to the alleged tenant?"

That there is some confusion and lack of harmony in the cases dealing with this and similar questions must be admitted.   The confusion has arisen by a failure to keep in mind the distinction between the different forms of action, including "malicious abuse" and "malicious use" of legal process.   *Porter* v. *Johnson, 96 Ga.* 145 (23 S. E. 123).   In that case it was not expressly ruled that a suit for the malicious use of legal process, in order to withstand a general demurrer, must allege that the suit has terminated favorably to the defendant therein, that is, the person bringing the suit for damages; but that question does not appear to have been involved in the *Porter* case.   The difference between the two forms of action has been so many times stated as not to require a repetition here.

It is a well-settled general rule that in an action for malicious use of legal process it is necessary to allege "that the action on which the process issued has been finally terminated in favor of the defendant therein."   *Mullins* v. *Matthews, 122 Ga.* 286, 289 (50 S. E. 101).   See also *Waters* v. *Winn,* 142 *Ga.* 138 (82 S. E. 537, L. R. A. 1915A, 601, Ann. Cas. 1015D, 1248) ; *Grant* v. *Moss,* 146 *Ga.* 87 (90 S. E. 709) ; *King* v. *Yarbray,* 136 *Ga.* 212 (71 S. E. 131) ; *Clement* v. *Orr,* 4 *Ga. App.* 117 (60 S. E. 1017) ; *Davis* v. *Hall,* 20 *Ga. App.* 398 (93 S. E. 25) ; *Dyer* v. *Fromshon,* 42 *Ga.*

*App.* 174 (155 S. E. 380). Perhaps there may be exceptions to the general rule to which we have just adverted, and at one time the wrongful suing out and levy of a distress warrant might have constituted such an exception. We refer to the case of *Sturgis* v. *Frost,* 56 *Ga.* 188. Even if the decision in that case should be construed as treating the action as a suit for a malicious use of process, as distinguished from some other form of action, it is apparent that the decision was based largely upon the legal impossibility of defending the distress warrant without making bond for the eventual condemnation-money, under the law as it then existed. The law was thereafter so amended by the legislature as to provide "that when the levying officer retains possession of the property of the tenant levied on, it shall not be necessary to give the bond for the eventual condemnation-money." Civil Code (1910), § 5391. The enactment of this statute appears to have removed the chief basis of the reasoning in the *Sturgis* case. It is now possible for the tenant to contest the liability even though he is unable to give the bond. Under the present law, he is not remediless and "at the mercy of the landlord" because of his inability to give the bond, as he might have been under the prior law. A distress warrant is final process until arrested by a counter-affidavit, but it may be converted into mesne process by the interposition of such a defense according to statute. This, we think, is a proper explanation of the case of *Sturgis* v. *Frost,* supra; and in this view it is harmonized with the decision in the later case of *Marable* v. *Mayer,* 78 *Ga.* 710 (3 S. E. 429), to the effect that in a suit for malicious use of process in suing out and levying a mortgage fi. fa. on personalty, it is necessary to allege that the foreclosure proceeding has terminated in favor of the defendant therein. Such an execution is also regarded as final process until it is arrested by counter-affidavit. *Ford* v. *Fargason,* 120 *Ga.* 606 (2) (48 S. E. 180). The same renowned jurist who delivered the opinion in *Sturgis* v. *Frost* was a member of this court at the time of the decision in *Marable* v. *Mayer,* supra, and concurred therein. Under the present law, a distress warrant is easily to be defended, and it does not possess the peculiar status which it occupied at common law. See McElroy *v.* Dice, 17 Pa. St. 163, 168; 1 Law Library (Bradby), 163, 168; 2 Cooley's Blackstone, 962-966.

The decision in *McSwain* v. *Edge,* 6 *Ga. App.* 9 (64 S. E. 116),

was criticised in *Davis* v. *Hall*, 20 *Ga. App.* 398 (3) (93 S. E. 25), by the statement that the "decision seems to overlook the necessary condition that the proceeding must not only have terminated, but terminated favorably to the defendant, before the action for the malicious use of civil process can be maintained."

Under the facts stated in the question certified by the Court of Appeals, the prosecution of the distress-warrant proceeding was not at an end, so as to give a right of action for the malicious use of legal process. It was essential to a right of action for a malicious use of such process that an issue should have been formed by a counter-affidavit, and that this issue should have terminated favorably to the alleged tenant.

*All the Justices concur, except Russell, C. J., and Hill, J., who dissent.*

HILL, J. The confusion or lack of harmony in cases dealing with question under consideration was noted by Chief Justice Simmons in *Porter* v. *Johnson*, 96 *Ga.* 145, 147 (supra) : "Keeping the differences in these various forms of action in view and excluding some dicta and loose expressions of some of our predecessors, all the cases cited from our reports by the learned counsel on both sides may be reconciled and harmonized, and applied with certainty to the allegations in the declaration now under consideration. The first count in the declaration alleges, in substance that the plaintiff's intestate had rented a certain house for a year, and that before the term expired the defendants, knowing this, maliciously and without probable cause sued out a dispossessory warrant, seized his goods, put them into the street and ejected him from the premises. According to all the decisions on the subject, both in England and in this country, if these allegations are sustained by proof the plaintiff ought to recover. The only conflict in the decisions, so far as my reading extends, is, that while a number of the courts hold that malice and want of probable cause in the institution of the proceeding are sufficient to authorize a recovery, others hold that there can be no recovery unless there was a seizure of the person or property. All concur in holding that where there is both malice and want of probable cause, and a seizure of the person or property, a recovery may be had. See, upon this subject, an able and interesting review of the cases, by Mr. Lawson, in 21 American Law Register (New Series), 281, 353. So far as I know, no respectable court

in this country has ever held that an action will lie against a person for having brought an action against another, unless he did so with malice and without probable cause. If the law were otherwise, the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action; and so on ad infinitum. This court is fully committed to the doctrine that such an action is not maintainable without proof of malice and want of probable cause. The doctrine was announced in the case of *Sledge* v. *McLaren*, 29 *Ga.* 64, and has been repeatedly recognized in other cases since. In that case the declaration alleged that McLaren, by reason of suing out an attachment against the plaintiffs, had their goods levied on and sold at a great loss and sacrifice, and that the business of the plaintiffs was broken up and destroyed; and it was held that the plaintiffs must show malice and want of probable cause."

In several cases the same rule has been applied, with the further ruling, not expressly stated in *Porter* v. *Johnson*, that a suit for the malicious use of legal process, in order to withstand a general demurrer, must allege that the suit has terminated favorably to the defendant, that is, the person bringing the suit for damages. *Marable* v. *Mayer*, 78 *Ga.* 710 (supra); *Hyfield* v. *Bass Furnace Co.*, 89 *Ga.* 827 (15 S. E. 752); *McDaniel* v. *Nelms*, 96 *Ga.* 366 (23 S. E. 407); *Mullins* v. *Matthews*, 122 *Ga.* 286, 289 (50 S. E. 101); *Grant* v. *Moss*, 146 *Ga.* 87 (90 S. E. 709); *Waters* v. *Winn*, 142 *Ga.* 138 (supra). But in *Sturgis* v. *Frost*, 56 *Ga.* 188, it was held: "A tenant is not obliged to replevy, disputing the rent by affidavit and giving security for the eventual condemnation-money, and then wait for a judicial determination of the controversy, in order to entitle him to commence an action against the landlord for suing out a distress warrant maliciously and without probable cause, and for having the same levied upon his goods. . . Distress warrant, unresisted, is final process of itself: 34 *Ga. Reports*, 178. After levy, it is more in the nature of a suit terminated than of a suit pending." The facts of the case were as follows: "A landlord sued out a distress warrant against his tenants for rent, and had the same levied upon their goods. The affidavit upon which the warrant issued showed on its face that the rent was not due, but

alleged that the tenants were seeking to remove the goods from the premises. The goods consisted of a stock in trade, and they remained some weeks in the custody of the sheriff, who advertised them for sale under the levy. The defendants procured them to be set apart by the ordinary as exempt property under the homestead and exemption laws, and the sheriff surrendered them as the result of that proceeding. Thereupon the tenants commenced their action against the landlord for suing out the distress warrant maliciously and without probable cause, and for having the same levied, alleging in the declaration that the landlord's affidavit, in so far as it charged them with seeking to remove their goods from the premises, was untrue; and making divers averments as to damages, etc. At the trial, the presiding judge nonsuited the plaintiffs, the ground of the motion for nonsuit being that the action was prematurely brought, it not appearing that the distress warrant proceedings were at an end." In delivering the opinion of the court Judge Bleckley said: "What proceedings are pending on the distress warrant? The record discloses none. The property seized has been claimed and surrendered. No second levy has been made, and the warrant, if still alive, has ceased to be active. The law makes no provision for contesting any distress warrant directly, except by replevying the goods: Code, section 4083. Where there are no goods to replevy, no contest is possible. If, therefore, all proceedings which have taken place on the distress warrant are not ended, there is no way to end them. They have reached a point where they must endure till time shall be no more, or until some new statute shall be passed to move them forward and terminate their existence. But it is said that the tenants could have replevied, and, by affidavit, made an issue for trial by the proper court, and that, not having done so while the levy was pending, they voluntarily waived their opportunity to lay a foundation for the present action. If this argument were sound, it would not prove that proceedings are still pending, but only that a certain possible proceeding never took place. But we can not sanction the doctrine that if a landlord, maliciously and without probable cause, levies a distress warrant upon his tenant, he is forever secure against an action for damages, unless the tenant will contest his claim at the cost of giving security for the eventual condemnation-money. The Code does not provide for litigating the warrant on any other terms. A mere

affidavit disputing the rent will not do; the property must be replevied; and in order to replevy, the eventual condemnation-money must be secured. This being so, if the tenant is unable to give the security he is at the mercy of the landlord. However groundless the claim, the property must sell; and if it be true that no action for malicious and unfounded levy can be brought unless the sale is arrested, the tenant is without remedy. Such a rule of law as this would imply could gain recognition only by being vouched upon incontestable authority. . . Distress warrant, considered as a suit, is both beginning and end. It is, of itself, final process, and has no pendency in any court: 34 *Georgia Reports,* 178. It stands to a suit proper as a guerrilla to a regular soldier, or as a privateer to a ship of the line. . . What has been said in reference to resisting a distress warrant by any means at all, even upon the hard condition of securing the creditor, applies to a warrant issuing for rent claimed to be due. The Code seems to provide literally for no other case. Its language is . . 'that the party distrained may in all cases replevy the property so distrained by making oath that the sum, or some part thereof, distrained for is not due, and give security for the eventual condemnation-money,' etc. The oath here prescribed would not fit a proceeding where the rent was avowedly not yet due. If the tenant had no point to make on the amount of the rent, but simply on the alleged purpose of removing his goods from the premises, could he vary the affidavit accordingly? In view of a decision of this court long ago made, excluding the defense of set-off because not covered by the verbiage of the statute, a doubt might well be entertained on this question: 23 *Georgia Reports,* 43. . . We express no opinion on other elements of the case further than to say that we think the jury ought to have been allowed to pass upon the facts, under proper instructions from the bench as to the law."

It is true that in the decision from which I have just quoted Judge Bleckley commented at some length upon the legal impossibility of defending a distress warrant without making bond for the eventual condemnation-money, and it is further true that the law has been subsequently amended so as to allow the filing of a counter-affidavit without giving such bond where the property levied upon remains in the hands of the levying officer. Ga. L. 1894, p. 52; Civil Code (1910), § 5391. But it is apparent from the entire

decision that the then-existing state of the law as to this matter was not the controlling factor. From the reasoning used it is obvious that the action was treated as a suit for malicious use of legal process; and the case is therefore on all fours with the case stated in the question here certified by the Court of Appeals. The rule that in a suit for malicious use of process it is necessary to allege that the action on which the process issued has been finally terminated in favor of the defendant therein is a mere general rule, and as such it is not entirely without exception. 38 C. J. 437-9, §§ 85, 86; 18 R. C. L. 21, § 11. A distress warrant is a peculiar process, originating in the common law, and it exists in Georgia to-day as a common-law writ except as modified by statute. For a discussion of the original character of such a proceeding, see McElroy *v.* Dice, 17 Pa. St. 163, 168; 1 Law Library (Bradby), 173, 176; 2 Cooley's Blackstone, 962-966. As said in *Sturgis* v. *Frost, supra,* a "distress warrant, considered as a suit, is both beginning and end. It is of itself final process, and has no pendency in any court." If it has "no pendency in any court," then it is not a proceeding which must have been terminated favorably to the tenant, within the general rule to which we have just referred. On the other hand, it constitutes an exception to such rule; and in this view there is no conflict between the decision in that case and other decisions applying the general rule. That decision appears to have been overlooked by the Court of Appeals in the decision in *Clement* v. *Orr,* 4 *Ga. App.* 117 (supra).

Under the facts stated in the question certified, "the prosecution [was] at an end, so as to give a right of action for a malicious use of legal process to the alleged tenant against the person suing out the distress warrant," and it was not "essential to such right of action that an issue should have been formed by a counter-affidavit filed, and that this issue should have been determined favorably to the alleged tenant." See further, in this connection, *Withers* v. *Hopkins Place Savings Bank,* 104 *Ga.* 89 (3), 99 (30 S. E. 766); *McCulloch* v. *Good,* 63 *Ga.* 519, 521; *Crusselle* v. *Pugh,* 71 *Ga.* 744, 747; 32 Cyc. 541 et seq. I am authorized to state that Chief Justice Russell concurs in this dissent.